# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| James E. Moore and Tim McGough, as Trustees of the Carpenters & Joiners Welfare Fund, Twin City Carpenters Pension Master Trust Fund, and Twin City Carpenter Vacation Fund; James E. Moore as Trustee of the Carpenters and Joiners Apprenticeship and Journeyman Training Trust Fund, and each of their successors, | Civil No. 09-3178 (DWF/SRN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| R.T.L. Construction, Inc., and Michael N. Larson, individually, | |
| Defendants and Counterclaimants. | |

___

Amanda R. Cefalu, Esq., and Pamela Hodges Nissen, Esq., Anderson, Helgen, Davis & Nissen, LLC, counsel for Plaintiffs.

Blake R. Nelson, Esq., and John J. Steffenhagen, Esq., Hellmuth & Johnson PLLC, counsel for Defendants.

___

## INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to Dismiss Defendants' Counterclaims. For the reasons stated below, the Court grants Plaintiffs' motion.

## BACKGROUND

Plaintiffs are trustees of the Carpenters & Joiners Welfare Fund, Twin Cities Carpenters Pension Master Trust Fund, Twin Cities Carpenters Vacation Fund, and Carpenters and Joiners Apprenticeship and Journeymen Training Trust Fund (collectively, the "Funds"). The Funds are multi-employer, jointly-trusteed fringe benefit plans that were created and are maintained under Section 302(c)(5) of the Labor Management Relations Act ("LMRA") and administered pursuant to the Employer Retirement Income Security Act ("ERISA"). (Compl. ¶¶ 1-6.) Defendant R.T.L. Construction, Inc. ("RTL Construction") is a Minnesota corporation engaged in the business of construction. (Compl. ¶ 7.) Defendant Michael N. Larson is the owner and an officer of RTL Construction. (*Id*. ¶ 8.)

In this action, Plaintiffs allege that they are entitled to collect unpaid fringe benefit contribution payments from Defendants under the terms of a collective bargaining agreement ("CBA") with the North Central States Regional Council of Carpenters (the "Union"). Defendants are bound by the CBA. (Compl. ¶ 11.) Plaintiffs allege that under the CBA, they were entitled to request that Defendants produce all relevant payroll and employment records for audit, that Plaintiffs have requested such production, and that after conducting an initial audit employees of RTL Construction informed Plaintiffs that RTL Construction instructed its employees to inaccurately report their hours so that the employees' paychecks did not accurately reflect the number of hours worked. (*Id*. ¶ 18.) Plaintiffs allege that Defendants refused to provide Plaintiffs with full access to payroll and business records. In addition, Plaintiffs allege upon information and belief that

Defendants have maintained separate payroll and employment records that were intentionally and fraudulently kept from Plaintiffs during the audit, intentionally falsified payroll and employment records, destroyed relevant documentation, and engaged in an intentional and fraudulent scheme to underpay employees and retain earnings for the benefit of the corporation. (Compl. ¶¶ 17-22.) Plaintiffs assert claims for a right to audit, breach of contract, and breach of fiduciary duty.

Defendants filed an Answer and Counterclaims for remitter and offset, constructive trust and accounting, and breach of fiduciary duty. Plaintiffs now bring a motion to dismiss Defendants' counterclaims under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Procedure.

## DISCUSSION

### I.     Motion to Dismiss

#### A.     Legal Standard

Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle by which to seek dismissal of a claim for lack of federal subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may challenge a plaintiff's complaint either on its face or on the factual truthfulness of its averments. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a defendant brings a facial challenge—a challenge that, even if truthful, the facts alleged in a claim are insufficient to establish jurisdiction—a court reviews the pleadings alone, and the non-moving party receives the same protections as it would defending against a motion brought pursuant to Rule 12(b)(6). *Id*.

3

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 579 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court recently reiterated, "[t]he threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

### B. Defendants' Counterclaims

Defendants assert three counterclaims against Plaintiffs: (1) Remittur and Offset; (2) Constructive Trust and Accounting; and (3) Breach of Fiduciary Duty. At the core of all of Defendants' counterclaims is the assertion that RTL Construction has overfunded the Plan by using incorrect wage rates under the CBA and that RTL Construction is entitled to a return of the excess payments. Defendants also assert that as fiduciaries under the terms of the CBA, Plaintiffs are legally obligated to return the excess contributions. Further, Defendants assert that Plaintiffs breached their fiduciary duty to RTL Construction by failing to provide notice of the amount of any claimed delinquent payments, commencing this action despite the CBA's arbitration clause, failing to allow RTL Construction to place the alleged delinquent payments into escrow, and "engaging in conduct that led to specific adverse economic activities by the Union in direct contravention of the terms of the Agreement." (Answer and Countercl. ¶ 23.)

Plaintiffs assert that Defendants' claims are preempted under section 514 of ERISA. The doctrine of "complete preemption" has been applied in cases arising under ERISA. *Chapman v. Lab One,* 390 F.3d 620, 629 (8th Cir. 2004). Section 515 of ERISA provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The Eighth Circuit has noted that this section was aimed at simplifying actions to collect delinquent contributions, avoiding costly litigation, and

enhancing the administration of multi-employer pension plans.  *Cent. States, Se. & Sw. Areas Pension Fund, et al. v. Indep. Fruit and Produce Co.*, 919 F.2d 1343, 1349 (8th Cir. 1990).  Further, section 514 provides that ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a).  "[T]he language of ERISA's preemption clause sweeps broadly, embracing common law causes of action if they have a connection with or a reference to an ERISA plan."  *Shea v. Esensten,* 107 F.3d 625, 627 (8th Cir. 1997).  In determining whether a state action "relates to" an employee benefit plan covered by ERISA, the court employs a two-part test.  *See Parkman v. Prudential Ins. Co. of Am.,* 439 F.3d 767, 771 (8th Cir. 2006).  A law relates to a covered employee benefit plan if it has (1) a connection with or (2) reference to such a plan.  *Id.*  To determine whether a state law has a sufficient "connection with" an employee benefit plan, the Court looks both to the objectives of ERISA as well as to the nature of the effect of the state-law claims on ERISA plans.  *Shea v. Esensten*, 208 F.3d 712, 718 (8th Cir. 2000).  Specifically, the Court considers whether the state law negates an ERISA plan provision, affects relations between primary ERISA entities, has an impact on the structure of ERISA plans, has an impact on the administration of ERISA plans, has an economic impact on ERISA plans, is consistent with other ERISA provisions, and is an exercise of traditional state power.  *Id*.

Here, all three of Defendants' counterclaims are premised upon the existence of and connected with the administration of an ERISA plan.  Specifically, Defendants' remittur and offset counterclaim centers on the allegation that Defendants have overfunded the Plan.  In their second counterclaim, Defendants seek the imposition of a

constructive trust or an accounting to account for the alleged excess contributions. Third, Defendants assert that Plaintiffs have breached their fiduciary duties "with respect to the administration of the Plan and enforcement of the remedies stipulated in the [CBA] regarding Plan contributions." (Answer and Countercl. ¶ 22.) Defendants' counterclaims are all premised on the existence of the Plan, are connected to the administration of the Plan, and specifically reference the Plan. Further, Defendants seek remedies that relate to the administration of the Plan. Based on the plain and specific allegations that form the basis of Defendants' counterclaims, Defendants' counterclaims are preempted by ERISA.

Defendants contend, however, that its counterclaims relate to and arise under the CBA, not the Plan, and therefore that Section 301 of the Labor Management Act ("LMRA") vests jurisdiction in the Court to adjudicate Defendants' counterclaims.

Section 301 of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). On its face, section 301 provides for federal jurisdiction over "suits for violations of contracts between an employer and a labor organization." *Id.* A "labor organization" under section 301 is defined as:

Any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

29 U.S.C. § 152(5). Defendants contend that this definition of "labor organization" is expansive enough to include Plaintiffs as trustees of fringe benefit plans. The Court disagrees. There is no evidence that the trustees exist "for the purpose of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." *Id*. Instead, a trustee of fringe benefit plan is required by statute to discharge his or her duties "with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of [] providing benefits to participants and their beneficiaries [] and [] defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Defendants have provided no authority for the notion that Plaintiffs are "labor organizations" under section 301(a) of the LMRA.

Even though Defendants assert that their counterclaims are asserted under the CBA and not preempted by ERISA, Defendants claim that their counterclaims would state a claim even under ERISA analysis. Specifically, Defendants assert that Plaintiffs breached the CBA and, as a consequence, have converted the ongoing audit into a coercive measure designed to benefit the Union rather than to "equally represent" RTL Construction. Defendants assert that the CBA is the basis for Plaintiffs' fiduciary duty to them. However, as noted above, a trustee of fringe benefit plans is required to discharge his or her duties solely in the interest of plan participants and beneficiaries. 29 U.S.C. § 1104(a)(1)(A). Defendants cite to no persuasive authority for the notion that its breach of fiduciary duty claim is cognizable under ERISA.

## CONCLUSION

Therefore, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1. Plaintiffs' Motion to Dismiss Defendants' Counterclaims (Doc. No. [6]) is **GRANTED.**

2. Defendants' Counterclaims are **DISMISSED WITH PREJUDICE**.


Dated: June 16, 2010                     s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge